**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**

| | |
|---|---|
| **HOME DEPOT U.S.A., INC.,** | **CASE NO. 5:25-CV-142-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **TURF DEVELOPMENT, LLC,** | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on Plaintiff Home Depot U.S.A., Inc.'s Motion for Summary Judgment (R. 26) and on Defendant Turf Development, LLC's Motion (R. 27) for Declaration of Rights.

## I.   Undisputed Facts

This case involves a dispute over an easement agreement between two neighbors. Plaintiff Home Depot U.S.A., Inc. owns a tract of land on Harrodsburg Road in Lexington, Kentucky. The tract includes a Home Depot retail store and parking spaces. The Court will refer to this tract as the Home Depot Tract.

Defendant Turf Development, LLC owns an adjacent tract of land. This tract was previously owned by Rubloff Turfland, LLC. Accordingly, the parties refer to this tract as the Rubloff Tract, and the Court will do the same.

In September 2024, Turf erected fencing around a portion of the Rubloff Tract located directly in front of Home Depot, which prevents Home Depot and its customers from entering or using that portion of the Rubloff Tract for parking, passing through, or any other purpose.  The Court will refer to this portion of the Rubloff Tract as the Subject Tract. Home Depot asserts that

the fencing around the Subject Tract violates the Easement Agreement between the parties.

The initial parties to the Easement Agreement were Home Depot and Rubloff Turfland, LLC, which was Turf's predecessor. There is no dispute, however, that Turf assumed all Rubloff's rights and obligations under the agreement.

The provision of the Easement Agreement at issue deals with parking and "passage and delivery" rights on the two tracts. It provides that Home Depot and Rubloff each convey to the other an easement and right-to-use:

> the common curb cuts, roadways, driveways, aisles, parking areas, walkways and sidewalks located on the Rubloff Tract and the Home Depot Tract, as may exist from time to time, for purposes of ingress, egress, parking (but only for the Rubloff Tract and specifically excluding the Verizon office building; Home Depot agreeing that it shall not object to tenants and employees of the Verizon building parking on the Rubloff Tract), passage and delivery, by vehicles and pedestrians.

(R. 1-2 Agreement § 1 ("Section 1")).

The fencing that Turf erected covers the entire perimeter of the Subject Tract so that Home Depot and its customers are unable to park on it or pass through it. Home Depot asserts a claim for breach of the Easement Agreement and requests a declaratory judgment that Turf's construction of the fence unreasonably interferes with Home Depot's easement rights. With its motion for summary judgment, Home Depot seeks judgment in its favor on both counts and dismissal of Turf's counterclaim.

That counterclaim asks the Court to make various declarations regarding the parties' rights under the Easement Agreement pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. With its motion for Declaratory Judgment, Turf asks for judgment in its favor on each of its requested declarations, including that the Easement Agreement grants Turf the right to

park on the Home Depot Tract but does not grant Home Depot the right to park on any portion of the Rubloff Tract, including the Subject Tract.

## II.    Analysis

### A. Home Depot's Parking and Passage Rights under the Easement Agreement

Home Depot asserts that the fencing around the Subject Tract prohibits it from using this portion of the Rubloff Tract for "passage and delivery" and parking.

There is no dispute that the Easement Agreement grants Home Depot the right to use the parking areas on the Rubloff Tract for "passage and delivery." (R. 1-2 Easement Agreement ¶ 1.) Nor can there be any dispute that the fencing prohibits Home Depot and its customers from passing through the Subject Tract.

The parties disagree about whether the Easement Agreement grants Home Depot parking rights on the Rubloff Tract. Both sides argue that Section 1 (quoted above) of the agreement is unambiguous on this issue. Home Depot argues that Section 1 unambiguously grants it the right park on the Rubloff Tract, including the Subject Tract. Turf, on the other hand, argues that Section 1 unambiguously provides that Home Depot has no parking rights on the Rubloff Tract.

Whether a contract is ambiguous is a question of law for the Court to decide. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). The Court found at the evidentiary hearing in this matter that Section 1 of the Easement Agreement is ambiguous regarding parking rights. (R. 21 Tr. 128.) The Court continues to find that.

The agreement is clear in that it grants both parties an easement and right to use the "the common curb cuts, roadways, driveways, aisles, parking areas, walkways and sidewalks" on each tract for "parking." The problem comes in the parenthetical after the word "parking," which provides as follows:

**(but only for the Rubloff Tract and specifically excluding the Verizon office building; Home Depot agreeing that it shall not object to tenants and employees of the Verizon building parking on the Rubloff Tract)**

Home Depot argues that this language "unambiguously grants Home Depot parking rights in the Rubloff Tract." (R. 26 Mem. 13.) To prove this point, however, Home Depot relies on the "context of the parties' dealings in 2001." (R. 26 Mem. 13.)

These dealings include multiple agreements that Rubloff and Home Depot entered into in 2001 after Rubloff filed suit against Home Depot in Kentucky state court. The agreements concerned parking rights not only for the Home Depot and Rubloff Tracts, but also for a tract owned by Rubloff's affiliate, Rubloff GTE, LLC. (R. 26 Mem. 13-14.) The tract owned by Rubloff GTE is also adjacent to the Home Depot Tract, on the opposite side from the Rubloff Tract. At the time of the agreements, the Verizon building referenced in the parenthetical was located there. Accordingly, the Court will refer to this tract as the Verizon Tract.

If all this extrinsic evidence cited by Home Depot is required to discern the meaning of Section 1 of the Easement Agreement, then the agreement is necessarily ambiguous. *See Cantrell Supply, Inc.*, 94 S.W.3d at 385 ("Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence.")

Like Home Depot, Turf also argues that Section 1 is unambiguous. It argues, however, that it unambiguously grants Turf the right to park on the Home Depot Tract but does not grant Home Depot the right to park on the Rubloff Tract. (R. 29 Mem. 4.)

As to the parenthetical, Turf argues that the language "but only for the Rubloff Tract" immediately after the word "parking" means that the agreement grants parking rights only *for the benefit* of the Rubloff Tract, not for the benefit of the Home Depot Tract. This is a reasonable

4

interpretation. The problem is that the Court cannot stop there. It must read the rest of the parenthetical and give effect to all the language. "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *Cantrell*, 94 S.W.3d at 384-85 (quoting *City of Louisa v. Newland, Ky*., 705 S.W.2d 916, 919 (Ky. 1986)).

Whatever parking rights are granted, the parenthetical after the word "parking" in Section 1 "specifically exclud[es] the Verizon office building." Thus, if the Court reads the parenthetical as Turf argues to provide that the only parking rights it grants are to Rubloff (now Turf), the parenthetical must then be read to provide that Rubloff cannot park on the Verizon Tract. But why would the agreement have prohibited Rubloff from parking on a tract owned by its own affiliate? The parenthetical then concludes with, "Home Depot agreeing that it shall not object to tenants and employees of the Verizon office building parking on the Rubloff Tract." But if the agreement does not grant Home Depot any right to park on the Rubloff Tract, why would the agreement prohibit Home Depot from objecting to anyone parking on that tract? What right would it have to object to object to anyone parking there?

In short, the Court continues to find the Easement Agreement ambiguous as to what parking rights are granted. This means that the Court may look beyond the four corners of the agreement to determine its intent. The Court may consider "parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply, Inc.*, 94 S.W. 3d at 385; *see also First Home, LLC v. Crown Commc'ns, Inc.*, No. 2010-CA-001701-MR, 2012 WL 95560, at *4 (Ky. App. Jan. 13, 2012) (applying *Cantrell* in construing an easement).

Resolving an ambiguity is generally a fact question for the jury. However, like every

motion for summary judgment, if the evidence regarding the meaning of the contract "is so one-sided that one party must prevail as a matter of law," then summary judgment for that party is appropriate. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986). *See also United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 406 (6th Cir. 2004) ("When interpreting an ambiguous contract with extrinsic evidence, summary judgment is proper so long as the extrinsic evidence presented to the court supports only one of the conflicting interpretations.") (cleaned up).

Home Depot submits evidence that the parking disputes between these parties go back at least 25 years. In 2001, Rubloff filed an action against Home Depot and sought a court declaration that Home Depot did not have the right to use the Rubloff Tract for "ingress, egress or parking." (R. 26 Mem. 4; R. 26-3 Rubloff 2001 Complaint ¶ 31 & Prayer for Relief ¶ 1.)

That action was resolved with a Settlement Agreement that was signed the day before the Easement Agreement. The Settlement Agreement included a parking provision that is identical to that contained in the Easement Agreement. (R 26-4 Settlement Agreement ¶ 2.)

The Settlement Agreement also contained a "ratification" of a Parking License Agreement, which concerned the Verizon Tract. (R. 26 Mem. 5; R. 26-4 Settlement Agreement ¶ 6 & Statement of Background ¶ H.)  The Parking License Agreement was between Montgomery Ward, which was the prior owner of the Home Depot Tract, and Jerome Ruttenberg, who was the prior owner of the Verizon Tract.

Again, the Verizon Tract is also adjacent to the Home Depot Tract on the side opposite the Rubloff Tract. It is owned by Rubloff's affiliate, Rubloff GTE. The Parking License Agreement allows Verizon office building tenants to park on portions of the Home Depot Tract. (R. 26 Mem. 5; R. 26-4 Parking License Agreement, CM-ECF p. 16 ¶ 1.)

This clears up the meaning of the parenthetical in the Settlement and Easement Agreements of the language, "but only for the Rubloff Tract and specifically excluding the Verizon office building" directly after the word "parking." This language clarifies that Home Depot's parking rights extend only to the Rubloff Tract and do not include the Verizon Tract. This is because, while the Parking License Agreement grants Verizon tenants the right to park on the Home Depot tract, it does not grant Home Depot a reciprocal right to park on the Verizon Tract.

The parenthetical also provides that Home Depot will not object to Verizon tenants and employees parking on the Rubloff Tract. This makes clear that the Settlement and Easement Agreements grant Home Depot the right to park on the Rubloff Tract. As discussed, there would be no reason to prohibit Home Depot from objecting to anyone parking on the Rubloff Tract if it has no parking rights on that tract itself.

Turf argues that the reason the parenthetical prohibits Home Depot from objecting to Verizon tenants and employees parking on the Rubloff Tract is because Home Depot could terminate the Parking License Agreement at any time. Turf asserts that the parenthetical in the Easement Agreement was included because Rubloff believed that, if Home Depot terminated the Parking License Agreement, Verizon tenants and employees would park on the Rubloff Tract. Thus, Turf argues, the parenthetical prohibits Home Depot from objecting to Verizon tenants and employees parking on the Rubloff Tract.

Turf points to no evidence to support this assertion of Rubloff's intent. The assertion is based only on conjecture. More importantly, this assertion does not explain why the Easement Agreement would prohibit Home Depot from objecting to Verizon tenants and employees parking on the Rubloff Tract if the Easement Agreement grants Home Depot no right to park on

the Rubloff Tract itself.

Turf argues that the Court cannot consider the Parking License Agreement on these summary judgment motions because Home Depot did not authenticate it. Federal Rule of Civil Procedure 56 permits a party to object to facts or material cited by the opposing party on the basis that the facts or material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Turf does not argue, however, that the Parking License Agreement is not authentic or cannot be authenticated at trial; it argues only that Home Depot has not authenticated the agreement on this motion. This is not a reason to exclude the agreement from consideration. Rule 56(c)(2) provides that a party can object to materials on the ground that "those materials *cannot* be presented in an admissible form, not on the ground that those materials *have not* been presented in an admissible form." *Ward v. KaTom Rest. Supply, Inc.*, No. 3:24-CV-119, 2026 WL 184279, at *5 (E.D. Tenn. Jan. 23, 2026) (citing cases and considering unauthenticated hiring documents on a motion for summary judgment where "nothing in the record suggests that this could not be rectified at trial" and the opposing party did not dispute the fact proved by the documents); *see also Louisville Galleria, LLC v. Philadelphia Indem. Ins. Co.*, 593 F. Supp. 3d 637, 645 (W.D. Ky. 2022); *Thomas v. Nat'l Coll. of Va., Inc.*, 901 F. Supp.2d 1022, 1035 (S.D. Ohio 2012) (citing cases and stating courts consider unauthenticated documents when deciding a motion for summary judgment "where the objecting party simply argue[s] that the proponent of the documents failed to properly authenticate the documents, as opposed to challenging the authenticity of the documents.")

Moreover, even if Turf did argue that the Parking License Agreement cannot be authenticated, Home Depot has met its burden to explain how it will authenticate the document at trial. Fed. R. Civ. P. 56(c)(2), advisory committee's note to the 2010 amendments ("The

8

objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.")

Home Depot points to Federal Rule of Evidence 901(b)(8), which provides that, for a document like the Parking License Agreement that is at least 20 years old, it can be authenticated if it is in a condition that creates no suspicion about its authenticity and if it was in a place where it would likely be if it were authentic.

Nothing about the Parking License Agreement is suspicious. It is referenced in the Settlement Agreement between Home Depot and Rubloff and attached to it. (R. 26-4 Settlement Agreement ¶ 6.) Turf does not dispute the authenticity of the Settlement Agreement. The Parking License Agreement bears the signatures of the parties to it and appears on its face to be what Home Depot purports it to be. Thus, its authenticity is supported by sufficient indicia of reliability. Further, Home Depot asserts that the agreement was found in its historical records alongside the Easement Agreement at issue, a place where it would likely be.

In addition to the Parking License Agreement, as evidence that the Easement Agreement grants Home Depot and Turf reciprocal parking rights, Home Depot also points to its Final Development Plan, which states precisely that. The Development Plan states, "Reciprocal parking and access shall be provided between Tracts 1 & 2 pursuant to agreement dated July 13, 2001. . . . ." (R. 14-2 Development Plan, Notes ¶ 14.) The agreement dated July 13, 2001 is the Easement Agreement. Tracts 1 & 2 are the Home Depot and Rubloff Tracts, respectively. (R. 14-2 Development Plan, Site Statistics.)

Turf argues that the Court should not consider this statement on the Final Development Plan because Home Depot does not identify who wrote it or what was intended by it. Turf does

not, however, dispute the authenticity of the Final Development Plan. (In fact, it submitted the plan as evidence.) (R. 14-2.) The plan is signed by both Home Depot and Rubloff. Accordingly, regardless of who wrote the typed notes set forth on it, the notes are evidence of the parties' intent. As to evidence regarding what the note means, it is unambiguous. It can be interpreted only to provide that the Easement Agreement grants reciprocal parking and access between the Home Depot and Rubloff Tracts.

All this extrinsic evidence can lead to only one interpretation of the Easement Agreement. The parties intended that the Easement Agreement grants reciprocal parking rights between the Home Depot and Rubloff Tracts. The parenthetical does not take any parking rights away from Home Depot as to the Rubloff tract. Instead, the parenthetical clarifies that, pursuant to the Parking License Agreement, Home Depot has no right to park on the Verizon Tract and cannot object to Verizon tenants and employees parking on the Rubloff Tract.

## B. Whether the Fence around the Subject Tract Unreasonably Interferes with Home Depot's Parking and Passage Rights on the Rubloff Tract.

An easement grantor "cannot unreasonably interfere with the rights of the holder of the easement." *Com., Dep't of Fish & Wildlife Res. v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995). "The easement holder has the burden of establishing that the servient owner's activities interfere with the holder's enjoyment of the servitude." The Law of Easements & Licenses in Land § 8:21. *See also See also Charlotte R. Sappo v. 4404 Holdings, LLC*, No. M2025-00279-COA-R3-CV, 2026 WL 1693502, at *10 (Tenn. Ct. App. June 11, 2026) ("To prevail on her claim for unreasonable interference, Ms. Sappo (the dominant landowner in this scenario) had the burden of proving that the Holdings (the servient landowner) unreasonably interfered with her use of the easement and caused actual damage to her."); *Morgan v. New Sweden Irr. Dist.*, 322 P.3d 980, 989 (Id. 2014)

(The "easement holder has the burden of showing unreasonable interference. If he meets that burden, then the servient estate must remove those encroachments.") 113 Causes of Action 2d 483 (Originally published in 2024) ("In the typical obstruction of easement case, where the plaintiff is an easement holder who seeks an injunction or a declaratory judgment, the easement holder has the burden of showing that the defendant's interference with the plaintiff's use of the easement is unreasonable.")

There is no dispute that the fencing around the Subject Tract completely prohibits Home Depot and its customers from parking on it and passing through it. In other words, Home Depot cannot exercise any of its easement rights on the Subject Tract.

Determining whether this interference with Home Depot's easement rights is reasonable "requires consideration of all the circumstances, including the purpose and reasonable use of the easement and the landowners' reasons for installing [the fence.]" *Sappo,* 2026 WL 1693502, at *10 (citation omitted). "The question is: Whether, under the specific facts presented, the obstruction is necessary to the use and enjoyment of the landowner's land and whether it does not unreasonably interfere with the easement holder's use of the right of way.'" *Id*. (cleaned up and citation omitted).

As to the burden the fencing places on Home Depot, Home Depot has presented evidence that the fencing not only prohibits Home Depot and its customers from parking on it but also "interrupts the flow of vehicle and pedestrian traffic on the parking areas within Home Depot's own parking lot." (R. 5-1 Phelps Aff. ¶ 5.)

Turf asserts that the Subject Tract consists of only .7 acres or 2.6 percent of the entire Rubloff Tract. But the location of this .7 acres is crucial. The Subject Tract comprises the parking spaces on the Rubloff Tract that are directly in front of Home Depot. (R. 14-4 Aerial

11

Map.) Home Depot has submitted evidence that this parking area on the Subject Tract is "important for accommodating Home Depot's customers, especially during busy times." (R. 5-1 Phelps Aff. ¶ 7.) Home Depot Store Manager Jason Thomas testified that customers have parked on the tract for the more than 17 years he has been with the company. (R. 21 Tr. 9.)

Further, the Subject Tract is right in front of Home Depot's customer loading bay. Home Depot has submitted evidence that "the fencing impedes the flow of traffic to and from the loading bay," and Home Depot's customers have complained. (R. 5-1 Phelps Aff. ¶ 7.)  Store Manager Thomas testified that he has received weekly complaints about the fence because of its impact on loading and parking for customers who drive vehicles with trailers. (R. 21 Tr. 20-23, 49.) These are generally Home Depot's professional contracting customers, who represent 43 percent of its revenue. (R. 21 Tr. 13.)

Because there are fewer parking spaces around the loading bay, professional customers must either park farther away from the bay or in the loading bay itself. (R. 21 Tr. 21.) Parking farther away is inconvenient for the professional contractors. (R. 21 Tr. 21.) Parking in the loading bay has extended wait times for Home Depot's professional customers, who must wait on the vehicles parked in the loading bay to leave before they can load up their own vehicles and trailers. (R. 21 Tr. 21-23.) Home Depot's Pro Associate Eric Linus testified that Home Depot competes with Lowe's and other similar stores largely by offering more convenience and better customer relations. It cannot compete much on price because it does not acquire product at a lower price than its competitors. (R. 21 Tr. 60, 117.)  Thus, the fencing has endangered Home Depot's ability to compete against its competitors. Some of Home Depot's professional customers have threatened to take their business to Lowe's due to the delays and inconvenience. (R. 21 Tr. 64.)

Turf asserts that the fencing around the Subject Tract is necessary to market the property. Ben Hammack, a part owner of Turf, testified that, when Turf acquired the Subject Tract in 2012, it was leased to Whitaker Bank and operated as a bank branch. (R. 21 Tr. 70-73; R. 14-6 Hammack Aff. ¶ ¶ 3-4.) Whitaker Bank's lease expired in September 2023, and it vacated the premises at the end of that month. (R. 21 Tr. 73, 75.) Turf continued to incur costs for taxes, insurance and utilities on the Subject Tract, so it wanted to find a new tenant. (R. 21 Tr. 75.) It attempted unsuccessfully to market the property itself. (R. 21 Tr. 75.) In December 2023, Turf retained commercial real estate brokerage Isaac Commercial Properties to find a tenant to lease the tract. (R. 21 Tr. 75-76; R. 14-6 Hammack Aff. ¶ 6.)

Up until that time, Whitaker Bank had permitted Home Depot to use the parking spaces on the Subject Tract because it did not have a lobby and, thus, did not need the spaces. (R. 21 Tr. 9.)  Home Depot had installed a cart corral on the parking spaces and regularly stored vehicles and equipment there that it rented to customers, including trucks and trailers. (R. 14-6 Hammack Aff. ¶ 6; R. 21 Tr. 9, 77.)

Hammack testified that commercial broker Isaac also had trouble finding a tenant and recommended that Turf install a fence around the Subject Tract. This was because, Home Depot "had so many vehicles and trucks and everything else on the lot, you can't really tell what's the lot." (R. 21 Tr. 77.) Turf installed the fence around the Subject Tract in September 2024. (R. 21 Tr. 81.) Even after the fence installation, however, Isaac was unable to lease the property. (R. 21 Tr. 86.) In January 2025, Turf and Isaac decided to try to sell the property instead of leasing it. (R. 21 Tr. 86.) To date, however, the Subject Tract remains vacant.

Turf presents no evidence that it must completely prohibit Home Depot from exercising its easement rights on the Subject Tract to market the property. In its response, Turf argues that

13

part of the problem in marketing the property was Home Depot's use of the parking spaces on the Subject Tract for storage. Turf presents no reason that Home Depot could not request or demand that Home Depot remove items stored on the Subject Tract but still permit Home Depot and its customers to enter the tract for parking and passage.

Hammack testified that the fencing is necessary to clearly outline the boundaries of the property. He testified that painting the boundaries did not work because "you can't see from one end [of the Subject Tract] to the other" and cars would park on the painted boundary lines obstructing them from view. (R. 21 Tr. 102; R. 14-6 Hammack Aff. ¶ 11.) He testified that he could not walk the lot with prospective tenants to show them the lot because "there's vehicles parked on the lot and there's trucks." (R. 21 Tr. 103.) He testified that, if Turf has to take down the fence, "there will be vehicles parked all over the property." (R. 21 Tr. 106.)

On cross-examination, however, Hammack conceded that he could show prospective tenants the property with a combination of maps, pictures, painted boundary lines, and walking the lot. (R. 21 Tr. 103.) The parties have demonstrated the property lines to this Court through pictures and maps and explanations by individuals. Turf has not argued that this has not been effective or accurate.

Finally, Turf argues that the fencing is necessary for it to exercise its rights to redevelop the Subject Tract. It asserts that it has the right to redevelop its property in a way that completely eliminates parking if it wants to. (R. 27 Mem. 11-12.) This may be true, but Turf has had the fence up for about 10 months now. It is undisputed that Turf has not conducted any development of the parcel in that time.

Turf argues that Home Depot is not entitled to a "permanent parking lot" on the Subject Tract. (R. 31 Reply 1.) Again, this may be true, but that is not the issue before this Court in this

litigation. The issue in this litigation is whether Turf can put a fence around the portion of the Rubloff Tract located directly in front of Home Depot for months without justification.

Whether interference with an easement is reasonable is often a question of fact. Here, however, Home Depot has presented undisputed evidence that the fencing around the Subject Tract has completely prohibited it and its customers from parking on the tract or passing through it. It has further presented undisputed evidence that this has caused parking difficulties and inconvenience for customers, especially Home Depot's professional contractor customers. Turf asserts only one reason for the fencing: that it is necessary to market the Subject Tract, but it presents no evidence to support this assertion. It asserts that the fence is necessary to show potential tenants or buyers the boundary lines, but it presents no evidence that other less burdensome methods of doing so would be inadequate.

Accordingly, the Court finds as a matter of law that Home Depot has met its burden to show that Turf has unreasonably interfered with Home Depot's easement rights on the Subject Tract by erecting a fence around it.

### C. Turf's Motion for Declaration of Rights

With its motion, Turf asks the Court to declare, pursuant to the federal Declaratory Judgment Act, that:

1) The Easement Agreement grants it the right to redevelop the Rubloff Tract.

2) Turf has a right to install temporary fencing needed to facilitate marketing, development, and construction.

3) Turf has parking rights on the Home Depot Tract while Home Depot has no parking rights on the Rubloff Tract.

4) Home Depot's placement of items in the parking lot on the Home Depot Tract violates the

15

Easement Agreement.

The federal Declaratory Judgment Act ("Act") states that, in "a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . . " 28 U.S.C. § 2201(a).

An actual case or controversy means a party must be "immediately in danger of sustaining some direct injury. . . ." *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127 (6th Cir.1995) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 448, (1923)). The "injury must be both real and immediate, not conjectural or hypothetical." *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (cleaned up).

The Supreme Court of the United States has explained that a declaratory judgment action satisfies the case-or-controversy requirement if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The dispute must be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Turf's entitlement to its first two requested declarations—that the Easement Agreement grants Turf the right to develop the Rubloff Tract and the right to install fencing—is either resolved by the Court's ruling regarding the fencing (the real and immediate dispute between the parties) or it involves facts that do not currently exist and, therefore, does not present a real, definite or concrete dispute.

In its motion, Turf indicates that it is "actively evaluating redevelopment concepts for the Subject Tract." (R. 27 Mem. 6.) It asks for guidance to "resolve disputes over the specific site

modifications that are permissible. . . ." (R. 27 Mem. 7-8.) No party has brought any evidence before the Court of any redevelopment happening at the Rubloff Tract or of any disputes between the parties regarding whether "specific site modifications" are necessary or permissible, or of what those specific site modifications might be. There is evidence of only one disputed physical change to the Subject Tract: the fencing. The Court has already resolved Turf's right to construct the fencing. Any other development that may take place in the future is hypothetical as is any dispute over Turf's right to do it.

The Court has resolved Turf's entitlement to the third requested declaration—the parties' parking rights on the two tracts.

That leaves Turf's fourth requested declaration—that Home Depot's placement of items on its own tract violates the Easement Agreement. Home Depot Store Manager Thomas testified that Home Depot constructed fenced areas on its own lot for bags of mulch and dirt for sale to customers. This merchandise is seasonal. Home Depot puts the fencing up in mid-March and takes it down July Fourth. (R. 21 Tr. 45, 91.) Home Depot also places its rental vehicles on the Home Depot lot. (R. 21 Tr. 91.) Finally, Home Depot places sheds on the property that are for sale to customers. (R. 21 Tr. 45, 91.) There is no dispute that these items prohibit Turf from parking on portions of the Home Depot Tract.

Turf states in its response brief that Home Depot's placement of these items on the Home Depot Tract "displaces parking and circulation on Home Depot's tract that Turf is entitled to, pushing traffic, customers, and operational load onto the Subject Tract and elsewhere . . . ." (R. 29 Response 13.) Turf cites no evidence of this. Nor does it cite any evidence that Home Depot's use of the Home Depot Tract has placed any burden on Turf at all.

Turf acquired the Rubloff Tract in 2012. Turf never complained about Home Depot's

17

placement of items on the Home Depot Tract until this dispute over the fence. (R. 21 Tr. 34, 105.) Turf argues that the Easement Agreement provides that its failure to complain about Home Depot's placement of items on its own parking lot does not constitute a waiver. Regardless, it does constitute evidence that Home Depot's interference with Turf's parking rights has not unreasonably burdened Turf.

Accordingly, Turf's motion for a declaratory judgment (R. 27) will be denied.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Home Depot's Motion for Summary Judgment (R. 26) is GRANTED.

2) Judgment will be entered in Home Depot's favor on Counts I and II of its Complaint and on Turf's counterclaim (R. 11).

3) The Court FINDS AND DECLARES as follows:

   a. the Easement Agreement GRANTS Home Depot the right to use the Rubloff Tract for the purposes set forth in Section 1 of the Easement Agreement including parking.

   b. Turf has unreasonably interfered with those rights by placing a fence around the Subject Tract.

   c. Turf MUST REMOVE the fencing around the Subject Tract within 14 days of the entry date of this order.

4) Turf's Motion for Declaratory Judgment (R. 27) is DENIED.

5) The Court will enter a final judgment consistent with this Opinion and Order.

* * * * * * * *

This 24th day of July, 2026.



**Signed By:**

_**Karen K. Caldwell**_

**United States District Judge**